**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**                    **FOR PUBLICATION**
------------------------------------------------------------X
In re:                                                          No. 08-01789 (BRL)

BERNARD L. MADOFF INVESTMENT                     SIPA LIQUIDATION
SECURITIES LLC,                                                 (Substantively Consolidated)

                                  Debtor.
------------------------------------------------------------X
In re:

IRVING H. PICARD, TRUSTEE FOR THE
LIQUIDATION OF BERNARD L. MADOFF
INVESTMENT SECURITIES LLC,
                                                                    Adv. Pro. No. 09-01503 (BRL)
                        Plaintiff,

            v.

PETER B. MADOFF, ESTATE OF MARK D.
MADOFF, ANDREW H. MADOFF,
INDIVIDUALLY AND AS EXECUTOR OF
THE ESTATE OF MARK D. MADOFF,
AND SHANA D. MADOFF,

                        Defendants.
------------------------------------------------------------X

APPEARANCES:

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone:    (212) 589-4200
Facsimile:    (212) 589-4201
By:    David J. Sheehan
         Tracy L. Cole
         Timothy S. Pfeifer
         M. Elizabeth Howe
         David M. McMillan
         John Siegal
         Marc D. Powers
         Jimmy Fokas
         Adam B. Oppenheim

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*

COHEN & GRESSER LLP
800 Third Avenue
New York, New York 10022
Telephone:    (212) 957-7600
Facsimile:    (212) 957-4514
By:    Mark S. Cohen
       Daniel H. Tabak

*Attorneys for Proposed Defendant Deborah Madoff*

COOLEY LLP
1114 Avenue of the Americas
New York, New York 10036
Telephone:    (212) 479-6000
Facsimile:    (212) 479-6275
By:    Alan Levine
       Lawrence C. Gottlieb
       Laura Grossfield Birger
       Michael A. Klein

*Attorneys for Proposed Defendant Stephanie S. Mack*

DAY PITNEY LLP
One Canterbury Green
Stamford, Connecticut 06901
Telephone:    (203) 977-7300
Facsimile:    (203) 977-7301
By:    Thomas D. Goldberg
       Matthew E. Smith

*Attorneys for Proposed Defendant Susan Elkin*

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone:    (212) 373-3000
Facsimile:    (212) 757-3990
By:    Martin Flumenbaum
       Stephen J. Shimshak
       Andrew J. Ehrlich
       Hannah S. Sholl

*Attorneys for the Estate of Mark D. Madoff and Andrew H. Madoff individually and as Executor of the Estate of Mark D. Madoff*

Before: Hon. Burton R. Lifland
        United States Bankruptcy Judge

## MEMORANDUM DECISION AND ORDER DENYING IN PART AND GRANTING IN PART THE TRUSTEE'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

*Query*: *Given ongoing forensic activity and the restrictions set forth by the Supreme Court in Krupski,[1] can the Madoff trustee simply add defendants at any time? Here, inclusion of ex and current spouses of Madoff's two sons is at play.*

Before the Court is the motion (the "Motion") of Irving H. Picard, Esq. (the "Trustee"), trustee for the substantively consolidated Securities Investor Protection Act ("SIPA") liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and Bernard L. Madoff ("Madoff") seeking leave to file a second amended complaint to (i) add Susan Elkin, Mark Madoff's first wife; Stephanie S. Mack, Mark Madoff's widow; and Deborah Madoff, Andrew Madoff's wife (collectively, the "Spouse Defendants"),[2] who allegedly received approximately $115 million in transfers from BLMIS;[3] (ii) include $28,948,035 in additional transfers (the "New Transfers") as to Peter B. Madoff; Andrew H. Madoff, individually, and as Executor of the Estate of Mark D. Madoff;[4] the Estate of Mark D. Madoff; and Shana D. Madoff (collectively, the "Family Defendants"); and (iii) clarify that $2,899,000 of the transfers to Shana D. Madoff alleged in the original complaint are now also claimed as transfers to Peter B. Madoff, and $2,500,000 of the

---

[1] *Krupski v. Costa Crociere S. p. A.*, 130 S.Ct. 2485 (2010).

[2] Scott Skoller, the husband of Madoff's niece, Shana Madoff, was originally named in this Motion. The Trustee, however, has since withdrawn the Motion as against Skoller. *See* Notice of Withdrawal Without Prejudice of Trustee's Motion for Entry of an Order Pursuant to Rules 15 and 20 of the Federal Rules of Civil Procedure as Incorporated by Rules 7015 and 7020 of the Federal Rules of Bankruptcy Procedure Granting Motion for Leave to File a Second Amended Complaint as Against Proposed Defendant Scott Skoller (Dkt. No. 87).

[3] Specifically, the Trustee alleges that the Spouse Defendants received the following amounts in avoidable and recoverable transfers from BLMIS or benefits from such transfers: Deborah Madoff ($67,766,382); Susan Elkin ($14,846,708); and Stephanie Mack ($33,269,358). *See* Memorandum of Law in Support of Trustee's Motion for Leave to File a Second Amended Complaint (Dkt. No. 71) [hereinafter "Tr. Mem."].

[4] Mark D. Madoff passed away on December 11, 2010. The parties have stipulated that Mark D. Madoff in the above-captioned adversary proceeding is substituted by the Estate of Mark D. Madoff and Andrew H. Madoff, as Executor. *See* Stipulation and Order Substituting Party (Dkt. No. 47).

transfers to Peter B. Madoff alleged in the original complaint are now also claimed as transfers to Shana D. Madoff (these transfers, together with the New Transfers, the "Family Transfers").

The Trustee seeks to add the Spouse Defendants to bring Bankruptcy Claims, Subsequent Transfer Claims and Common Law Claims (all defined below) against them. The heart of the dispute revolves around whether the Trustee has satisfied the relation back standard set forth in Federal Rule of Civil Procedure ("Rule") 15(c)(1)(C)(ii) to permit him to add the Spouse Defendants in connection with the Bankruptcy Claims. Specifically, the issue is whether the Trustee has demonstrated that but for a mistake on his part, the Spouse Defendants knew or should have known that they would be included in the Trustee's complaint. The Trustee posits that the Spouse Defendants were on constructive notice that they should have been sued, as (i) this has been a highly publicized case, (ii) the Trustee's investigation has been ongoing, (iii) the Trustee sought transfers in the original complaint of which the Spouse Defendants were beneficiaries, and (iv) it became clear to the Trustee, upon Mark's death, that naming only Mark and not Stephanie was a mistake. The Spouse Defendants object, arguing that they reasonably believed their omission from the original complaint was not a mistake but rather a deliberate tactic on the part of the Trustee. Indeed, the Trustee is a sophisticated party who had access to extensive documentation regarding the roles, status, and finances of the Spouse Defendants, as well as ample legal support to review and analyze such documentation. Furthermore, he elected to exclude *all* of the Spouse Defendants from not only the original complaint but also from the amended complaint, opting instead to sue them in a number of separate adversary proceedings. Under these circumstances, the Court finds that the Trustee has not met the relation back standard under Rule 15. In fact, it would not be unreasonable for the Spouse Defendants to infer that their omission from the original complaint was the result of a strategic decision on the part

of the Trustee and not a mistake. Accordingly, the Court declines to permit leave to the Trustee to add the Spouse Defendants to pursue the Bankruptcy Claims.

With regard to the Subsequent Transfer Claims, the Court grants leave to add the Spouse Defendants because, as these claims are not time barred, the Trustee need not satisfy the relation back standard under Rule 15.

With regard to the Common Law Claims of constructive trust and unjust enrichment, the Court grants leave to add Stephanie S. Mack and Deborah Madoff because (i) these claims are not time barred and (ii) the futility of such an amendment is not clear on the face of the proposed second amended complaint, as determining the applicability of *in pari delicto* to these claims against the Spouse Defendants involves unsettled law.

The Trustee also seeks to add and clarify transfers with regard to the Family Defendants. As these transfers relate back under Rule 15 and no one has objected to such relief, the Court permits the Trustee leave to add and clarify them.

Accordingly, for the reasons set forth below and at oral argument, the Trustee's Motion is DENIED in part and GRANTED in part to the extent described herein.

## **BACKGROUND**[5]

The Motion arises in connection with the infamous Ponzi scheme perpetrated by Madoff through his investment company, BLMIS.

### **1. The Trustee's Complaints Against The Family And Spouse Defendants**

The Trustee commenced the instant adversary proceeding on October 2, 2009 by filing a complaint (the "Original Complaint") against the Family Defendants.[6]  The Original Complaint

---

[5] For a detailed background of the mechanics of the Madoff Ponzi scheme and the events preceding the Trustee's complaints, see *SIPC v. BLMIS LLC (In re BLMIS)*, 424 B.R. 122, 125-32 (Bankr. S.D.N.Y. 2010).

[6] For a detailed description of the Family Defendants' involvement in BLMIS, see *SIPC v. BLMIS LLC (In re BLMIS)*, 458 B.R. 87, 101-03 (Bankr. S.D.N.Y. 2011).

sought to avoid and recover more than $180 million in fraudulent transfers and preferences from BLMIS to the Family Defendants and asserted various common law claims. The Family Defendants filed motions to dismiss (the "Motions to Dismiss") the Original Complaint on or about March 15, 2010. This Court subsequently issued an order (the "Bankruptcy Court Order") denying in part and granting in part the Motions to Dismiss, with leave granted to amend. On November 7, 2011, the Trustee filed an amended complaint (the "Amended Complaint") against the same defendants for largely the same claims as those specified in the Original Complaint. On December 22, 2011, the United States District Court for the Southern District of New York (the "District Court") denied leave to appeal the Bankruptcy Court Order. *See* Order of U.S. District Court Judge William H. Pauley, III signed on 12/22/2011 (Dkt. No. 74). The Trustee filed the instant Motion the next day.

The Trustee did not name Susan Elkin, Stephanie Mack, or Deborah Madoff in either the Original or Amended Complaint, suing them instead in separate adversary proceedings in December 2010. Susan Elkin was married to Mark from September 1989 until their divorce in June 2000, which took place more than eight years prior to the commencement of the BLMIS SIPA liquidation. She has been named by the Trustee in her capacity as guardian of K. M.[7] in an adversary proceeding challenging gifts made by Madoff to the children of Susan and Mark Madoff. *See* Adv. Pro. No. 10-05328; PSAC,[8] ¶ 9. Stephanie Mack was married to Mark Madoff from October 2004 until his death in 2010. She has been named by the Trustee in two adversary proceedings seeking transfers to her or the Mark and Stephanie Madoff Foundation, in the total amount of nearly $2.1 million. *See* Adv. Pro. Nos. 10-05325, 10-05328; PSAC, ¶ 4. Finally, Deborah Madoff married Andrew in January 1992 and commenced divorce proceedings

---

[7] K.M. refers to one of the two children of Susan and Mark Madoff.

[8] Proposed Second Amended Complaint (Dkt. No. 71), Ex. 1 [hereinafter the "PSAC"].

against him in December 2008.  She has been named by the Trustee in two separate adversary proceedings seeking transfers to her or the Deborah and Andrew Madoff Foundation in the total amount of nearly $2.1 million.  *See* Adv. Pro. Nos. 10-05330, 10-05332.

### 2. The Instant Motion And The Proposed Second Amended Complaint

On December 23, 2011, the Trustee filed the instant Motion seeking leave to file the proposed second amended complaint.  In the PSAC, the Trustee seeks to avoid and recover fraudulent transfers in the collective amount of over $255 million made to the Family and Spouse Defendants pursuant to sections 105(a), 502(d), 510(c), 544, 547, 548(a), and 551 of the Bankruptcy Code (the "Code"), and New York Debtor and Creditor Law (the "NYDCL")[9] (the "Bankruptcy Claims").  He argues these claims should be permitted because the Spouse Defendants knew or should have known that their exclusion from the Original Complaint was a mistake in accordance with Rule 15(c)(1)(C)(ii), as (i) "the Trustee previously sought recovery of the entirety of transfers to the Family and Spouse Defendants—rather than the portion attributable to only one spouse," *see* Tr. Mem., p. 12; (ii) the PSAC "reflects the continuing nature of the Trustee's investigation," *see id.*; (iii) the "Trustee has brought a very public case against the Family Defendants," *see id.* at 9; and (iv) "it became apparent to the Trustee that naming Mark alone, and not Stephanie as well, could have been a mistake" when, upon Mark's death, Stephanie "took the position that [certain] homes became hers alone," Reply Memorandum of Law in Further Support of Trustee's Motion for Leave to File a Second Amended Complaint [hereinafter "Tr. Rep."] (Dkt. No. 98), p. 14.

---

[9] N.Y. Debt. & Cred. Law § 270 *et seq.* (McKinney 2001).

The Trustee also seeks to bring subsequent transfer claims of approximately $5.5 million against the Spouse Defendants[10] under section 550 of the Code (the "Subsequent Transfer Claims"). Specifically, the PSAC includes allegations of additional subsequent transfers received by Shana Madoff in the amount of $2,500,000, Susan Elkin in the amount of $2,395,000, Deborah Madoff in the amount of $625,000, and subsequent transfers of interests in property of undetermined value to Stephanie S. Mack. *See* Tr. Rep., p. 14. The Trustee argues that these claims should be permitted since they were filed within the relevant statute of limitations period.

In addition, the Trustee seeks damages for breach of fiduciary duty, negligence, unjust enrichment, constructive trust, and accounting under New York common law (the "Common Law Claims"), arguing they should be permitted as to the Spouse Defendants since, *inter alia*, the Spouse Defendants cannot rely on *in pari delicto* as an affirmative defense.

On February 22, 2012, each of the Spouse Defendants, as well as Andrew and the Estate of Mark Madoff, filed an objection, all arguing against the inclusion of the Spouse Defendants as to the Bankruptcy Claims because the Trustee has not met his burden under Rule 15(c)(1)(C)(ii). In addition, the Spouse Defendants argue that *in pari delicto* is available as an affirmative defense. No one has objected to the inclusion or clarification of the Family Transfers. A hearing was held on April 3, 2012.

## STANDARD FOR GRANTING LEAVE TO FILE AN AMENDED COMPLAINT

While a court should freely give leave to amend a complaint when justice so requires, it must deny it where the amendment would be futile. *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994) (citing *Foman* v. *Davis*, 371 S.Ct. 178,

---

[10] The Trustee has also alleged subsequent transfers received by Peter Madoff ($312,500), the Estate of Mark Madoff ($625,000), and Andrew Madoff ($625,000), *see* Tr. Rep., p. 14, which are included within the Family Transfers.

182 (1962)). "An amendment to a complaint is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). An amendment filed after the applicable statute of limitations has run and where the claims do not relate back to the date of an earlier timely pleading will therefore be deemed futile. *See Rodriguez v. City of New York*, 10-CIV-1849, 2011 WL 4344057, at *6 (S.D.N.Y. Sept. 7, 2011).

The relate back standard is set forth in Rule 15(c)(1). A plaintiff seeking to add defendants may satisfy this standard if:

> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out—or attempted to be set out—in the original pleading; or
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

FED. R. CIV. PROC. 15(c)(1). The purpose of relation back under Rule 15(c)(1)(C) is "to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." *Krupski v. Costa Crociere S. p. A.*, 130 S.Ct. 2485, 2494 (2010). Specifically, "[a] prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose," whereas "repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity." *Id.*

Under Rule 15(c)(1)(C)(ii), the movant must show the proposed defendant knew or should have known the action would have been brought against him but for a mistake. *Enron Corp. v. J.P. Morgan Sec. Inv. (In re Enron Corp.)*, 361 B.R. 36, 41 (Bankr. S.D.N.Y. 2006). As the Supreme Court explained, "the question under Rule 15(c)(1)(C)(ii) is what the prospective defendant reasonably should have understood about the plaintiff's intent in filing the original complaint against the first defendant." *Krupski*, 130 S.Ct. at 2496. Therefore, this "requisite knowledge . . . typically is established" by the movant's demonstrating that there were allegations in the original complaint "respecting a named party that, in fact, concern the originally unnamed party plaintiff seeks to add." *Esmilla v. Cosmopolitan Club*, No. 09-CIV-10169, 2011 WL 814007, at *3 (S.D.N.Y. Mar. 3, 2011) (internal citations and quotations omitted); *see, e.g.*, *Krupski*, 130 S.Ct. at 2490-92 (permitting plaintiff to add defendant because her original complaint "made clear that Krupski meant to sue the company that owned . . . the ship on which she was injured" but mistakenly listed Costa Cruise Lines N. V. instead of Costa Crociere S. p. A.); *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 128 (2d Cir. 2001) (finding a Rule 15 mistake because the complaint described the plaintiff's interactions with Touchdown Jacksonville *Inc.*, but mistakenly named Touchdown Jacksonville, *Ltd.*). A court may also consider the plaintiff's post filing conduct during the Rule 4(m) period to the extent it "informs the prospective defendant's understanding of whether the plaintiff initially made a 'mistake concerning the proper party's identity.'" *Krupski*, 130 S.Ct. at 2496-97 (quoting Rule 15). On the other hand, if "the original complaint and the plaintiff's conduct compel the conclusion that the failure to name the prospective defendant in the original complaint was the result of a fully informed decision . . . the requirements of Rule 15(c)(1)(C)(ii) are not met." *Id.* at 2496. Indeed, "a deliberate choice to sue one party instead of another while

10

fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper parties identity." *Id.* at 2494.

## DISCUSSION

### I. THE TRUSTEE MAY NOT ADD THE SPOUSE DEFENDANTS IN CONNECTION WITH THE BANKRUPTCY CLAIMS

As the statute of limitations for bringing the Bankruptcy Claims against the Spouse Defendants has lapsed, any attempt to do so by the Trustee would be deemed futile unless those claims relate back to the Original Complaint. Here, the Trustee has failed to satisfy the relation back requirements of Rule 15. Accordingly, the Court denies the Motion to the extent it seeks to add the Spouse Defendants in connection with the Bankruptcy Claims.

### a. The Bankruptcy Claims Against The Spouse Defendants Are Time Barred

The Trustee's Bankruptcy Claims against the Spouse Defendants are barred by the applicable statute of limitations. Section 546(a) of the Code requires, in relevant part, that the Trustee must commence any action or proceeding under section 544, 545, 547, 548 or 553 no later than either (i) two years after the entry of the order of relief, or (ii) one year after the appointment or the election of a trustee. *See* 11 U.S.C. § 546(a). In this case, the order for relief was filed on December 11, 2008 when the District Court granted SIPC's application to provide SIPA protection to BLMIS customers. *See* SIPA § 78*lll*(7). Therefore, in order to timely assert the Bankruptcy Claims against the Spouse Defendants, the Trustee was required to commence an adversary proceeding by December 11, 2010, which he failed to do. Accordingly, the Trustee's Bankruptcy Claims against the Spouse Defendants are barred by the relevant statute of limitations.

b.  <u>The Bankruptcy Claims Against The Spouse Defendants Do Not Relate Back To The Original Complaint</u>

Granting leave to add the Spouse Defendants as beneficiaries of the Bankruptcy Claims is deemed futile and may not be permitted because those claims against the Spouse Defendants are time barred and do not relate back to the Original Complaint.  With respect to relation back, the parties' main dispute centers on Rule 15(c)(1)(C)(ii), which requires that but for the plaintiff's mistake concerning the identity of the proper party, the party to be brought in by amendment "knew or should have known that the action would have been brought against it."  FED R. CIV. PROC. 15(c)(1)(C)(ii).  The Trustee has not met this requirement; he has failed to show that, but for a mistake on his part, the Spouse Defendants knew or should have known that they would have been included in his complaint.

i.  *The Trustee Has Not Met His Burden Under Rule 15(c)(1)(C)(ii)*

The Trustee has not satisfied his burden under Rule 15(c)(1)(C)(ii).  In light of the allegations set forth in the Original Complaint and the Trustee's conduct, it was not unreasonable for the Spouse Defendants to believe that their omission from the Original Complaint was not a mistake but rather the result of a fully informed decision for two principal reasons.  <u>First</u>, the Trustee opted to omit the Spouse Defendants from both the Original and the Amended Complaint even though the circumstances surrounding the instant proceeding suggest that he was aware of the "factual and legal differences" between the Family Defendants and the Spouse Defendants.  *See Krupski*, 130 S.Ct. at 2494.  Indeed, the Trustee, a sophisticated party who has commenced hundreds of adversary proceedings in this case, was (i) in possession of numerous relevant documents, including financial disclosure forms from Mark and Andrew Madoff, that

identified the roles, legal status, and interests of the Spouse Defendants[11] alleged by the Trustee in the Original Complaint, and (ii) armed with a large team of lawyers who had a significant period of time to assist the Trustee in his review and analysis of this documentation. Then, with this extensive knowledge and these plentiful resources, the Trustee omitted all three of the Spouse Defendants from the Original Complaint, omitted them again from the Amended Complaint (which was filed almost a year after the death of Mark Madoff), and instead chose to sue them in a number of separate adversary proceedings. This does not appear, therefore, to be a case where plaintiff intended to sue party A but sued party B due to mistaken identity. *See, e.g.*, *Krupski*, 130 S.Ct. at 2490–92; *VKK Corp.*, 244 F.3d at 128. Nor is this a case where the Trustee knew that party A exists while incorrectly believing him to have the status of party B, or one in which he misunderstood the roles of party A and party B. *See Krupski*, at 2494. Rather, the Trustee described the actions of the Family Defendants – not the Spouse Defendants – and then sued only the Family Defendants. *See Esmilla*, 2011 WL 814007, at *4 ("Based on these allegations, Plaintiff's initial decision to proceed against the Club - and *none* of its officers - reasonably would have been viewed by the Officers as a strategic decision, not a mistake by Plaintiff . . . .") (emphasis in original).

---

[11] The Trustee even acknowledges that he "had documents describing the Spouse Defendants' interest in homes purchased with the avoidable and recoverable Transfers identified in the original complaint." Tr. Rep., p. 6; *see also* Complaint Against Stephanie Morgan, Individually, And As Guardian Of A.V.M., Daniel Madoff, K. M., A. V. M., Susan Elkin, As Guardian Of K. M., Mark Madoff, As Guardian Of K. M. And A. V. M. (Adv. Pro. No. 10–05328) (Dkt. No. 1), ¶ 13 ("Susan Elkin is the former wife of Mark Madoff and maintains her residence in Greenwich, Connecticut. Mrs. Elkin is named as a defendant herein in her capacity as the legal guardian of minor defendant K. M."); *id.* at ¶ 9 ("Stephanie Morgan f/k/a Stephanie Madoff (née Mikesell) is currently married to Mark Madoff . . . and maintains her residence in New York, New York. Mrs. Morgan is named as a defendant in this Complaint individually, as the recipient or beneficiary of some of the avoidable transfers referenced herein, and in her capacity as the legal guardian of minor defendant A. V. M."); *id.* at ¶¶ 27-29 (alleging deposits of purportedly avoidable transfers were made "into a bank or brokerage account to, or for the benefit of, Mrs. Morgan."); Complaint Against Deborah Madoff, Individually And As Guardian Of A. M. And E. M., E. M., A. M., Andrew Madoff, As Guardian Of A. M. And E. M. (Adv. Pro. No. 10-05332) (Dkt. No. 1), ¶ 9 ("Deborah Madoff (née West) was married to Andrew Madoff, Madoff's son, and maintains her residence in New York, New York. Ms. Madoff and Andrew Madoff filed for divorce on December 11, 2008. Ms. Madoff is named as a defendant in this Complaint individually, as the recipient or beneficiary of some of the avoidable transfers referenced herein, and in her capacity as the legal guardian of minor defendants A. M. and E. M.").

Second, the Original Complaint included voluminous faithless servant allegations, which could reasonably be interpreted as reflecting an intention to sue only high level employees at BLMIS.  In fact, the Trustee publicly indicated on national television that the Original Complaint represents claims against family members, all of whom held senior positions at BLMIS:

> [T]hey were officers of [BLMIS], and directors in certain instances as well, and also compliance officers in a very highly regulated environment. So, I think clearly they would have to have known what was going on given their own personal transactions, the longevity of what was happening, and their responsibilities as officers of the company.

*See* 60 Minutes: Meet the Liquidators (Sept. 27, 2009), *available at* http://www.bakerlaw.com/files/PublicDocs/Video/Madoff/2009/60_Minutes_Picard_Sheehan_M adoff_9-2009.wmv (last visited April 3, 2012).  Therefore, it would not be unreasonable for the Spouse Defendants to infer that their omission was deliberate.

### ii.    *The Trustee's Relate Back Arguments Under Rule 15 Are Unavailing*

The Trustee asserts four primary arguments to demonstrate that the Spouse Defendants knew or should have known that their omission from the Original Complaint was a mistake, none of which are persuasive.

First, the Trustee argues that since he "previously sought recovery of the entirety of transfers to the Family and Spouse Defendants—rather than the portion attributable to only one spouse," the Spouse Defendants were on constructive notice of the Original Complaint and therefore should have known that their omission was a mistake.  Tr. Mem., p. 12.  Yet, in light of the Trustee's extensive knowledge and ample resources and given the Trustee chose to exclude all of the Spouse Defendants from both the Original and Amended Complaints, suing them instead in separate adversary proceedings, it seems that the Trustee chose to pursue the entirety of the transfers solely from the Family Defendants and not from the Spouse Defendants. In addition, were the Court to adopt this argument, Rule 15 would not pose any obstacle to future

plaintiffs seeking to obtain transfers from the spouses of individuals named in actions years earlier.  Put differently, accepting this argument would reduce pleading requirements such that a movant would have to name only transfers, not parties.

Second, the Trustee asserts that the PSAC "reflects the continuing nature of the Trustee's investigation and analysis of transfers."  *Id*.  The Trustee contends that his "investigation has, for example, accurately identified the individuals for whom real estate was purchased with Customer Property."  *Id*.  The Trustee is seemingly arguing that the continuing nature of the investigation somehow implies that the Spouse Defendants knew or should have known that they were mistakenly omitted from this proceeding.  Lending credence to this argument, though, would eviscerate the statute of limitations by providing a basis for future plaintiffs to relate back pleadings under Rule 15 solely because their investigations were of a "continuing nature."  The Court refuses to adopt such a position, as it would affect a dramatic reduction in pleading requirements at the expense of the "strong interest in repose" of those "who legitimately believed that the limitations period had passed without any attempt to sue him."  *Krupski*, 130 S.Ct. at 2494; *see also In re Morgan Stanley Mortg. Pass-Through Certificates Litigation*, No. 09-CIV-2137, 2010 WL 3239430, at *9 (S.D.N.Y. Aug. 17, 2010) ("Rule 15(c) may not be used as an end-run around the statute of limitations to add a party that filed a separate complaint that was time barred.") (internal quotations and citations omitted).

Third, the Trustee alleges that the Spouse Defendants were on constructive notice of the Trustee's mistake based on the extensive media coverage of the Trustee's actions, which sought transfers from which the Spouse Defendants allegedly benefitted.  This allegation, however, only reaches what the Spouse Defendants *could have known* and not whether they *knew or should have known* that they were not named because of a mistake concerning identity, as is required

under Rule 15.  More importantly, though, this argument can be turned on its head: as there has been extensive media coverage and the Trustee has nevertheless omitted the Spouse Defendants, it was not unreasonable for them to infer the Trustee made a conscious decision to exclude them.

Finally, the Trustee asserts that because Stephanie took the position that certain homes became hers alone upon Mark's death, "it became apparent to the Trustee that naming Mark alone, and not Stephanie as well, could have been a mistake."  Tr. Rep., p. 1.  But evidence suggesting that a plaintiff seeking to add a new defendant only after learning that the originally named defendant would not be able to satisfy a judgment "counter[s] any implication that [the plaintiff] had originally failed to name [the proposed defendant] because of any 'mistake concerning the proper party's identity,'" especially where the plaintiff "had originally been under no misimpression about the function [the proposed defendant] played in the underlying dispute . . . .  [And plaintiff] knew of [proposed defendant's] role as well as his existence." *Krupski,* 130 S.Ct. at 2495-96 (internal quotations omitted).  Furthermore, this apparent mistake concerns only some transfers, only one of the Spouse Defendants and arose from events transpiring more than a year after the Trustee filed the Original Complaint.[12]

## II. The Trustee May Add The Spouse Defendants In Connection With The Subsequent Transfer Claims

Section 550 of the Code provides:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the

---

[12] The Trustee suggests that, in determining whether the Trustee's NYDCL claims alleged in the PSAC relate back to the Original Complaint, the Court may also apply New York's relation-back rule.  But New York's rule is unavailing because, like Rule 15, it requires that the new party knew or should have known that, but for a mistake as to the identity of the proper parties, the action would have been brought against him as well.  *Fisher v. County of Nassau,* No. 10–CIV–0677, 2011 WL 4899920, at *5 (E.D.N.Y. Oct. 13, 2011) (internal quotation and citations omitted).  With respect to this requirement, therefore, "New York's relation back law employs the same standard as the federal rule."  *Sloane v. Town of Greenburgh,* No. 01-CIV-11551, 2005 WL 1837441, at *3 (S.D.N.Y. July 27, 2005); *see, e.g., Fisher,* 2011 WL 4899920, at *5; *Corcoran v. New York Power Auth.,* 935 F. Supp. 376, 393 n.24 (S.D.N.Y. 1996).  In turn, given that the Trustee has not met his burden under Rule 15(c)(1)(C)(ii), he likewise cannot meet his burden under the New York rule.

> trustee may recover, for the benefit of the estate, the property transferred, or, if the
> court so orders, the value of such property from –
>> (1) the initial transferee of such transfer or the entity for whose benefit
>> such transfer was made; or
>> (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a). Section 550(f) of the Code "provides that a recovery action must be brought

no later than one year after the avoidance of the transfer or the closing or dismissal, whichever

occurs first." *Official Comm. of Unsecured Creditors of M. Fabrikant & Sons, Inc. v. J.P.*

*Morgan Chase Bank (In re M. Fabrikant & Sons, Inc.)*, 394 B.R. 721, 746 n.23 (Bankr. S.D.N.Y.

2008). Therefore, "without the judgment of avoidance, the period of limitations under § 550(f)

would never start to run." *Id.* In this action, no transfer has been "avoided under section 544,

545, 547, 548, 549, 553(b), or 724(a)." Accordingly, the Subsequent Transfer Claims are not

time barred. *See Pry v. Maxim Global, Inc. (In re Maxim Truck Co.)*, 415 B.R. 346, 353 (Bankr.

S.D. Ind. 2009) (permitting the trustee to add a named defendant's spouse as a subsequent

transferee where no transfer had been avoided and more than seven years had elapsed between

the commencement of the case and the trustee's filing an amended complaint); *see also In re*

*Enron Corp.*, 361 B.R. at 49-50 (indicating section 550(f) of the Code can provide a basis to add

a party as a subsequent transferee when Rule 15(c) does not). Therefore, the Trustee may add

the Spouse Defendants in connection with the Subsequent Transfer Claims.

### III. THE TRUSTEE MAY ADD STEPHANIE MACK AND DEBORAH MADOFF[13] IN CONNECTION WITH THE COMMON LAW CLAIMS OF CONSTRUCTIVE TRUST AND UNJUST ENRICHMENT

As of the date of the Trustee's Motion, the approximately $33 million that has been

alleged against Stephanie S. Mack and the $43 million that has been alleged against Deborah

Madoff for the Common Law Claims of constructive trust and unjust enrichment were all still

---

[13] The Trustee may not, however, add Susan Elkin in connection with the Common Law Claims of constructive trust and unjust enrichment because all transfers naming her are alleged to have taken place outside the relevant six year statute of limitation period.

17

within the six-year statutes of limitations applicable to those claims under New York law.
Section 108(a) of the Code permits the Trustee to utilize the New York statutes of limitation
applicable to common law causes of action.    *See* 11 U.S.C. § 108(a) ("If applicable
nonbankruptcy law . . . fixes a period within which the debtor may commence an action, and
such period has not expired before the date of the filing of the petition, the trustee may
commence such action . . . before . . . the end of such period"); *see also Argo Communc'ns
Corp. v. Centel Corp. (In re Argo Commc'ns Corp.)*, 134 B.R. 776, 785 (Bankr. S.D.N.Y. 1991)
("As the forum State, New York's relevant limitations periods must thus be applied here in
determining whether Trustee's common law claims are time-barred.").    Accordingly, the Trustee
may add these claims irrespective of whether they relate back to the date of the Original
Complaint.

The Spouse Defendants argue that these claims should not be added because such an
amendment would be futile.    In this respect, they emphasize that *in pari delicto* bars the Trustee
from asserting the Common Law Claims since the Trustee has not alleged that the Spouse
Defendants are insiders of BLMIS.    *See In re BLMIS*, 458 B.R. at 124 (concluding that *in pari
delicto* may not apply to the Trustee's claims against the Family Defendants because of their
status as insiders of BLMIS).    The Trustee counters that *in pari delicto* cannot apply here
because, if it did, it would effectively permit insiders to escape accountability for corporate
wrongdoing by simply pawning transfers off to their spouses.    Neither side has cited to a case on
point—namely, whether *in pari delicto* applies to transfers to a non-insider that were joint and
simultaneous with transfers to an insider—and this Court has not found one either.    As this issue
therefore appears to be one of first impression, it is not clear from the face of the pleadings that
the amendment would be futile, such that "it appears to a *certainty* that [Plaintiff] cannot state a

claim." *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) (emphasis added); *see Town of New Windsor v. Tesa Tuck, Inc.*, 919 F. Supp. 662, 678 (S.D.N.Y. 1996) ("Although defendants . . . appear to have strong defenses to the [plaintiff's] claims, because the [plaintiff's] claims present issues of first impression, this Court cannot conclude that they are futile on their face.").  Accordingly, the Trustee may add Stephanie Mack and Deborah Madoff in connection with the Common Law Claims of constructive trust and unjust enrichment.

## IV. THE TRUSTEE MAY ADD AND CLARIFY THE FAMILY TRANSFERS

The Court grants the Trustee leave to add and clarify the Family Transfers because they were part of the same course of conduct as the transfers alleged in the Original Complaint, which provided adequate notice to the Family Defendants of the Family Transfers.  Rule 15(c)(1)(B) requires that an amendment asserting "a claim or defense" must arise out of "the conduct, transaction or occurrence set out—or attempted to be set out—in the original pleading."  FED. RULE CIV. PROC. 15(c)(1)(B).  Accordingly, new fraudulent transfer claims relate back to existing ones if the former were part of the same "course of conduct."  *Adelphia Recovery Trust v. Bank of Am., N.A.*, 624 F. Supp. 2d 292, 334 (S.D.N.Y. 2009); *see also Hill v. Oria (In re Juliet Homes, LP)*, No. 07–36424, 2011 WL 6817928, at *8 (Bankr. S.D. Tex. Dec. 28, 2011) ("[P]referential transfers may be part of a course of conduct when they are alleged to have occurred alongside fraudulent transfers as part of an overarching scheme.").

"The principal inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party 'by the general fact situation alleged in the original pleading.' "

The "principal inquiry" in this regard is whether "the general fact situation alleged in the original pleading" provides "adequate notice" to the opposing party "of the matters raised in the amended pleading." *Buchwald Capital Advisors LLC v. J.P. Morgan Chase Bank, N.A. (In re Fabrikant & Sons, Inc.)*, 447 B.R. 170, 181 (Bankr. S.D.N.Y. 2011) (internal quotations and citations omitted). That is, "Rule 15(c) does not set a high bar for relation back, so long as the claims attempted to be asserted in the new complaint share a reasonable measure of common ground with the allegations of the original pleading." *See Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 27 (Bankr. E.D.N.Y. 2007).

In the PSAC, the Trustee sets forth the Family Transfers against the Family Defendants under the same legal theories as the ones set forth in the Original Complaint – where the Family Defendants were also named – including that BLMIS was engaged in a Ponzi scheme and made the Transfers with the actual intent to defraud its creditors. *See* PSAC, Exs. D, F, J, M. In addition, allegations in the Original Complaint of Madoff's Ponzi scheme gave reasonable notice that the Trustee was still uncovering additional transfers and seeking any amounts that may have been transferred as part of that scheme:

> BLMIS was operated as if it were the family piggy bank. Each of the Family Defendants took huge sums of money out of BLMIS to fund personal business ventures and personal expenses such as homes, cars, and boats. The Family Defendants' misappropriations of BLMIS customer funds ranged from the extraordinary (the use of BLMIS customer funds to pay for multi-million dollar vacation homes) to the routine (the use of BLMIS customer funds to pay their monthly credit card charges for restaurants, vacations, and clothing). *At this time*, the Trustee has identified at least $198,743,299 of customer funds received by the Family Defendants.

Complaint against Peter B. Madoff, Mark D. Madoff, Andrew H. Madoff, Shana D. Madoff (Dkt. No. 1), ¶¶ 3-4 (emphasis added); *see also Juliet Homes,* 2011 WL 6817928, at *7. Indeed, no Family Defendant, or anyone else, has objected to the addition of the Family Transfers. As such, the Court grants the Trustee leave to add and clarify them.

## <u>CONCLUSION</u>

For the reasons stated above, the Court denies leave to the Trustee to add the Spouse Defendants with respect to the Bankruptcy Claims, but grants leave to add them in connection with the Subsequent Transfer Claims and to add Stephanie Mack and Deborah Madoff in connection with the Common Law Claims of constructive trust and unjust enrichment.  In addition, the Court grants leave for the Trustee to add and clarify the Family Transfers. Accordingly the Motion is DENIED in part and GRANTED in part to the extent described herein.

**IT IS SO ORDERED.**


Dated: New York, New York
      April 4, 2012

 

<u>/s/ Burton R. Lifland</u>
United States Bankruptcy Judge